UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JULIE M. W.,[1]

     Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

_____

**DECISION AND ORDER**

1:20-cv-01741 (JJM)

    This is an action brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to review the final determination of the Commissioner of Social Security that plaintiff was not entitled to Supplemental Security Income ("SSI") benefits.  Before the court are the parties' cross-motions for judgment on the pleadings [21, 25].[2]  The parties have consented to my jurisdiction [26].  Having reviewed the parties' submissions [21, 25], the Commissioner's motion is granted, and plaintiff's motion is denied.

## BACKGROUND

    The parties' familiarity with the 547-page administrative record [13] is presumed. In October 2017, plaintiff filed an application for SSI, alleging disability beginning January 1, 2017 due to a bulging disc at L5, nerve damage in her right shoulder and neck, severe depression and anxiety, and a learning disability.  Id. at 154.  After the application was denied, an

---

[1]  In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2]  Bracketed references are to the CM/ECF docket entries. Page references to the administrative record are to the Bates numbering.  All other page references are to the CM/ECF pagination.

administrative hearing was conducted before Administrative Law Judge ("ALJ") Benjamin

Chaykin on October 11, 2019, at which plaintiff, who appeared with an attorney, and vocational

expert Quinton Boston testified. Id. at 30-57 (transcript of hearing).

Mr. Boston testified that an individual with plaintiff's residual functional capacity

("RFC") could perform the jobs of a classifier of laundry, marker, and non-postal mail clerk,

warehouse. Id. at 53. In addition, he testified that an employer's tolerance for off-task time is a

maximum of 15% within an 8-hour day, and that light work positions required an individual to

stand for at least six hours in an eight-hour workday. Id. at 54.

Based upon the medical evidence and testimony, ALJ Chaykin found that

plaintiff's severe impairments were "spine disorder, irritable bowel syndrome, obesity, coccygeal

fracture, obesity, affective disorder, anxiety disorder, posttraumatic stress disorder ('PTSD'),

[and] personality disorder". Id. at 17. In order to determine plaintiff's RFC, ALJ Chaykin

considered functional assessments from multiple sources: consultative examiners Janine Ippolito,

PsyD and John Schwab[3], D.O.; LMSW Samantha Chambers and Dr. Chelsea R. Kendren;

Physician Assistant ("PA") Melanie Leberman; and state agency medical consultants J. Koenig,

M.D. and G. Kleinerman.[4]

After conducting a physical examination, Dr. Schwab concluded that plaintiff

"has a mild restriction to bending, lifting, and carrying heavy objects and mild restriction to

rotating her head in each direction." Id. at 333. PA Leberman assessed a number of significant

---

[3]      ALJ Chaykin mistakenly refers to Dr. Schwab in his decision as "John Swan, D.O."

[4]      Neither Kr. Konig's nor G. Kleinerman's first name, nor G. Kleinerman's specialty appear in the
record. G. Kleinerman performed a Psychiatric Review Technique assessment. Plaintiff refers to G.
Kleinerman as a "State Agency review psychiatrist". Plaintiff's Memorandum of Law [21-1] at 7. The
Commissioner does not challenge this designation.

functional restrictions, but stated in her assessment that "[t]hese are conditions that are treatable

from a specialist[.]  NOT PERMANENT DISABILITY".  Id. at 476.  Elsewhere in her report,

she states, "[p]atient has treatable back pain needs to keep [appointments] [with] back specialist,

likely injections.  From a medical perspective she is not permanently disabled".  Id. at 478.

       After conducting a review of the medical evidence in the file, including the

opinion of Dr. Schwab, Dr. Koenig determined the plaintiff could frequently lift and/or carry up

to 20 pounds and could stand, walk, or sit for about 6 hours in an 8-hour workday.  Id. at 65.

       Dr. Ippolito conducted a psychiatric evaluation, including a mental status

examination.  Id. at 323-28.  She concluded plaintiff had a "mild to moderate" limitation in

understanding, remembering, or applying complex directions and instructions.  Id. at 326.  Dr.

Ippolito opined plaintiff had "moderate" limitations interacting with supervisors, co-workers, and

the public; sustaining concentration and performing tasks at a consistent pace; sustaining an

ordinary routine and regular attendance at work; and regulating emotions, controlling behavior,

and maintaining well-being.  Id.

       After conducting a review of the psychiatric evidence in the file, including the

opinion of Dr. Ippolito, Dr. Kleinerman opined that plaintiff had only mild limitations in the

domains of interacting with others and adapting or managing oneself.   Id. at 62.

       Plaintiff's treating mental health providers, LMSW Chambers and Dr. Kendren,

completed a Mental Impairment Questionnaire on May 31, 2019.  Id. at 356-61.  They indicated

that plaintiff had "[n]o useful ability to function" in the following mental abilities related to

unskilled work: working in coordination with, or in proximity to others, without being unduly

distracted; completing a normal workday and workweek without interruptions from

psychologically based symptoms; asking simple questions or requesting assistance; and dealing

with normal work stress.  Id. at 359.   LMSW Chambers and Dr. Kendren also opined that

plaintiff's "ability to function" was "seriously limited" in the following functional areas:

accepting instructions and responding appropriately to criticism from supervisors; and

responding appropriately to changes in a routine work setting.  Id.  They found plaintiff had a

"marked" degree of limitation interacting with others and adapting or managing herself.  Id. at

360.  Finally, they opined that plaintiff had "no useful ability" to travel in an unfamiliar place

and a "seriously limited" ability to: interact appropriately with the general public; maintain

socially appropriate behavior; and use public transportation".  Id.  As support for these opinions,

LMSW Chambers and Dr. Kendren cited plaintiff's "social anxiety and [generalized anxiety

disorder] symptoms", noting that they "negatively impact social situations".  Id.  In addition, she

stated that plaintiff was "highly avoidant".  Id.

    Finally, ALJ Chaykin considered functional information contained in June 2019

forms completed by LMSW Chambers concerning plaintiff's PTSD and depression symptoms.

Id. 540-43.

    Based upon these opinions and other evidence in the file, ALJ Chaykin concluded

that plaintiff had the RFC to perform light work, with several modifications.  He found Dr.

Kleinerman's opinion "not persuasive because it suggests that the claimant does not have severe

mental impairments; however, the evidence discussed above suggests symptoms and limitations

that would more than minimally interfere with the claimant's ability to perform basic work

activities."  Id. at 22.   ALJ Chaykin found Dr. Ippolito's opinion "mostly persuasive" because,

"[i]t is generally supported by her own examination findings and is consistent with the finding

that the claimant can perform simple tasks and persist in a work setting without unreasonable

interference from mental health symptoms".  Id. at 23.  He noted, however, that Dr. Ippolito

found plaintiff had mild to moderate limitations in the domain of understanding, remembering and applying complex directions, while he found that plaintiff had moderate limitations in all domains after considering other evidence in the record.  Id.

ALJ Chaykin found that the marked limitations opined by LMSW Chambers and Dr. Kendren were "not persuasive" because they "did not provide an explanation for [their] marked findings", included other findings that were inconsistent with the marked limitations, and were inconsistent with their own treatment records.  Id.  Similarly, he found "not persuasive" the limits contained in the PTSD and depression symptoms questionnaire because "it overstates the extent of limits when compared to the objective findings and record as a whole."  Id.  He noted that "[n]one of the claimant's treatment records, the mental health examinations suggests this degree of limitation" and that plaintiff "never required inpatient care or intensive day treatment to manage her mental health symptoms".  Id.

Turning to the opinions concerning plaintiff's physical limitations, ALJ Chaykin stated that Dr. Schwab's opinion of "mild" restrictions is "not persuasive because the descriptors used to describe the claimant's functional limitations are vague, and not defined".  Id.  Nonetheless, he found "the opinion as a whole is consistent with the claimant's examination results and supports a finding that her physical impairments do not cause limitations that would preclude the claimant from all competitive work activity".  Id.  He observed that the results of Dr. Schwab's physical examination of plaintiff "was largely within normal limits" and did not suggest "standing and walking limitations that would preclude [plaintiff] from light exertional work".  Id.

ALJ Chaykin found the limitations in PA Leberman's report "not persuasive".  Id. at 23-24.  He noted it was inconsistent both internally and with PA Leberman's physical

examination findings from the same day.  Id. at 24.  Further, PA Leberman "reported that the claimant's MRI findings were not alarming" and stated that the limitations in her report "were likely temporary".  Id.

Finally, ALJ Chaykin found "not persuasive" the State agency medical consultant's opinion that plaintiff was capable of medium exertional work.  He explained that the medical evidence of a coccyx fracture, plaintiff's lumbar pain, and obesity "would reasonably limit the claimant to less than medium exertional work".  Id.

Based upon the RFC and the vocational expert's testimony, ALJ Chaykin determined that plaintiff was able to perform jobs that exist in significant numbers in the national economy, and therefore was not disabled, as defined in the Social Security Act.  Id. at 25.  The Appeals Council found no basis to change ALJ Chaykin's decision.  Id. at 1-4. Thereafter, this action ensued.

## DISCUSSION

### A.    Standard of Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. §405(g)).  Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

An adjudicator determining a claim for Social Security benefits employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920.  The plaintiff

bears the burden with respect to steps one through four, while the Commissioner has the burden at step five.  Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012).

Plaintiff argues that ALJ Chaykin rejected all the opinions concerning her physical limitations, creating a gap in the record that he failed to fill.  Plaintiff's Memorandum of Law [21-1] at 16.  She contends that ALJ Chaykin impermissibly substituted his own judgment for the medical opinions in the record and created a "middle ground" RFC that was not supported by any medical opinion.  Id at 18.  With respect to her mental health conditions, plaintiff argues that ALJ Chaykin "*effectively*" rejected "all medical opinions regarding [plaintiff's] mental limitation and then interpret[ed] the raw psychiatric data (objective clinical findings) to formulate [plaintiff's] function-by-function mental RFC".  Id. at 19 (emphasis in original).  Specifically, plaintiff argues that ALJ Chaykin's finding "that [plaintiff] can specifically sustain concentration for 2 hours is arbitrary and not based on substantial evidence".  Id. at 21.  Because the ALJ rejected all the medical opinions in the record concerning plaintiff's mental functional abilities, plaintiff argues, the RFC is not supported by substantial evidence.  Id. at 23.

The Commissioner responds that ALJ Chaykin's decision concerning plaintiff's mental and physical RFC is supported by substantial evidence, including the portions of the medical opinions that he found persuasive, information in plaintiff's medical records (*i.e.* diagnostic study reports, findings upon examination, and treatment notes), and plaintiff's own claims.  Commissioner's Memorandum [25-1] at 9-21.  The Commissioner argues that plaintiff, who bears the burden of proof, failed to show "that any reasonable factfinder was compelled to assess greater restrictions based on this record".  Id. at 13.  For the following reasons, I agree with the Commissioner.

**B.      Did ALJ Chaykin Improperly Formulate the RFC?**

It is the ALJ's responsibility to "weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole". Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (Summary Order). In doing so, an ALJ may not "arbitrarily substitute [his/her] own judgment for competent medical opinion." Riccobono v. Saul, 796 F. App'x 49, 50 (2d Cir. 2020) (Summary Order).

However, "the ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as [the conclusion] is supported by substantial evidence." Schillo v. Kijakazi, 31 F.4th 64, 78 (2d Cir. 2022).  Moreover, "[w]here . . . the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity . . . a medical source statement or formal medical opinion is not necessarily required".  Monroe v. Commissioner of Social Security, 676 F. App'x 5, 8 (2d Cir. 2017) (Summary Order). *See also* Corbiere v. Berryhill, 760 Fed. App'x 54, 57 (2d Cir. 2019) (Summary Order) (despite the absence of a medical source statement regarding the plaintiff's work related functional abilities and an MRI that revealed "a small L4-5 disc protrusion and mild L4-5 facet joint changes", treatment records indicating that the plaintiff could "stand and walk without difficulty" and had "full lower extremity strength" constituted substantial evidence for the RFC); Cook v. Commissioner of Social Security, 818 F. App'x 108, 109-10 (2d Cir. 2020) (Summary Order) ("although there was no medical opinion providing the specific restrictions reflected in the ALJ's RFC determination, such evidence is not required when the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity. Here, the treatment notes were in line with the ALJ's RFC determinations").

In this case, there were plainly divergent medical opinions concerning plaintiff's mental and physical limitations, but this did not obligate the ALJ to pick one or the other. *See also* Patrick R. v. Commissioner of Social Security, 2022 WL 17247242, *3 (W.D.N.Y. 2022) ("[i]It has been well-recognized that it is the ALJ who is tasked with formulating an RFC based on a review of the entire record, and that it is within the ALJ's discretion to resolve genuine conflicts in the evidence"); Schillo, 31 F.4th at 78 (rejecting the argument that "having declined to afford controlling weight to any of the three physicians' opinions, the ALJ was . . . prohibited from making an RFC finding whatsoever"). By departing from those opinions, however, the ALJ was required to use the treatment notes, diagnostic tests, medical opinions, and other "data points" to identify "with specificity" how the RFC was formulated. Schillo, 31 F.4th at 78 ("the ALJ accorded the treating physicians' opinions lesser and not no weight, she still considered their conclusions to assess Schillo's RFC. The ALJ also looked to the other sources in the administrative record, including MRI results, x-ray results, and notes documenting Schillo's visits with other medical providers. Using these opinions and data points, the ALJ laid out with specificity Schillo's physical capabilities"). For the reasons that follow, I conclude that ALJ Chaykin properly exercised that authority.

### 1.    Plaintiff's Physical RFC is Supported by Substantial Evidence

ALJ Chaykin noted that Dr. Schwab concluded plaintiff had a "mild restriction to bending, lifting and [carrying] heavy objects" and a "mild restriction to rotating her head in each direction". Administrative Record [13] at 23. He concluded that "this opinion is not persuasive because the descriptors used to describe the claimant's functional limitations are vague, and not defined". Id. Plaintiff argues that ALJ Chaykin "rejected" this medical opinion. Plaintiff's

Memorandum of Law [21-1] at 16.  However, ALJ Chaykin's analysis did not stop there.  He

goes on to credit much of Dr. Schwab's opinion:

> "Nonetheless, the opinion as a whole is consistent with the
> claimant's examination results and supports a finding that her
> physical impairments do not cause limitations that would preclude
> the claimant from all competitive work activity.  As noted, the
> claimant's physical examination was within normal limits.
> Accordingly, the examination of the claimant also does not suggest
> that she has standing and walking limitations that would prelude
> her from light exertional work, as defined in the regulations."

Id.  Plaintiff reported to Dr. Schwab that she has "constant pain with an intensity of 8/10" that

"radiates down both lower extremities" and that her "legs go numb" "if she sits too long".  Id. at

330.  Upon examination, however, Dr. Schwab noted that plaintiff "appeared to be in no acute

distress" and walked with a "normal" gait.  Id. at 21, 331.  She could walk on her heels and her

toes "without difficulty, perform a full squat", had a "normal stance".  Id.  She was able to get

"on and off the exam table" without help and "rise from a chair without difficulty".  Id.

      Courts in this circuit have frequently held that a restriction to light work accounts

for mild to moderate functional limitations.  *See*  White v. Berryhill, 725 F. App'x 80, *81-82

(2d Cir. 2019) (Summary Order) (finding that substantial evidence supported an RFC "to

perform a modified version of light work" where the record contained a doctor's opinion stating

plaintiff had "'moderate limitations' in standing, sitting, and performing other activities"); Glab

v. Commissioner, 2018 WL 3422062, *3-4 (W.D.N.Y. 2018) (ALJ's conclusion that plaintiff

"was capable of performing light work was fully consistent" with doctor's opinion that plaintiff

had "mild limitations in repetitive pushing, pulling, lifting, and carrying"); Amons v. Astrue, 617

F.Supp.2d 173, 176 (W.D.N.Y. 2009) (finding that substantial evidence supported ALJ's

determination that plaintiff retained the RFC to perform a full range of light work with some

additional limitations where examining physician reports reflected "moderate limitations in walking, standing, squatting, climbing and reaching").

As pointed out by the Commissioner ([25-1] at 11-14), ALJ Chaykin's Decision concerning plaintiff's ability to perform light work was supported by his analysis of Dr. Schwab's report, including the findings upon examination, the similar findings and notes contained in the records of plaintiff's treating providers, and the plaintiff's testimony. Administrative Record [13] at 21, 23.  Accordingly, ALJ Chaykin's findings concerning plaintiff's RFC were supported by substantial evidence.

Moreover, ALJ Chaykin's treatment of PA Leberman's opinion is also supported by substantial evidence.  ALJ Chaykin found PA Leberman's opinion "not persuasive" because her "physical examination of the claimant did not reveal limitations consistent with" the limitations included in her opinion.  Id. at 24.  PA Leberman examined plaintiff on June 26, 2019 - the same day that she completed her Medical Opinion Re: Ability to Do Work-Related Activities.  See id. at 470-74 (treatment note dated 6/26/2019) and 475-478 (Medical Opinion). Upon examination, PA Leberman found that, despite plaintiff's complaints of "diffuse lower back tenderness on palpation", plaintiff had "normal posture", "no instability", "[n]ormal muscle tone", and no limitations in the range of motion of her spine.  Id. at 472.  Her muscle tone and bulk was "normal" "bilaterally" and her reflexes were normal.  Id.  Notwithstanding these largely normal findings, PA Leberman stated that plaintiff could lift a maximum of "less than 10" pounds, could only stand or walk a maximum of "about 2 [hours]" in an 8-hour day, and could sit a maximum of "about 6 [hours]" in an 8-hr day, but only for 45 minutes at a time.  Id. at 478-79.

PA Leberman reviewed the results of plaintiff's June 12, 2019 MRI with plaintiff. Id. at 473.  She stated in her Assessment and Care Plan that the MRI "results do not show an indication for permanent disability".  Id.  "Her current limitations would be temporary in my medical opinion . . . strongly advise [follow-up] with back specialist, given new referrals. [R]eminded patient this is a treatable condition [and] she needs to follow through with specialist".  Id.  Given PA Leberman's comments concerning plaintiff's MRI findings and her examination note, which failed to note any limitation in strength or range of motion, ALJ Chaykin concluded that PA Leberman's functional assessment "appears to be based on the claimant's subjective reports of her own symptoms, and not based on the actual clinical information".  Id. at 24.  Accordingly, he concluded that PA Leberman's functional assessment was "inconsistent with the physical examinations findings, when considered as a whole".  Id.

ALJ Chaykin elucidated his reasoning in the portion of his Decision concerning Plaintiff's physical RFC.  He neither mischaracterized nor cherry-picked the record to support his conclusion.  Therefore, I find that his conclusions concerning plaintiff's physical RFC are supported by substantial evidence. That is, a "reasonable mind might accept" ALJ Chaykin's reasoning  "as adequate to support [his] conclusion".  Consolidated Edison Co., 305 U.S. at 229.

I come to the same conclusion concerning ALJ Chaykin's analysis of the evidence concerning plaintiff's mental health conditions.

## 2.    Plaintiff's Mental RFC is Supported by Substantial Evidence

ALJ Chaykin found Dr. Ippolito's opinion "mostly persuasive".  Dr. Ippolito found plaintiff had "moderate" limitations in "sustain[ing] concentration and perform[ing] a task at a consistent pace", "sustain[ing] an ordinary routine and regular attendance at work", "regulat[ing] emotions, control[ling] behavior, and maintain[ing] well-being".   Administrative

Record [13] at 326.  However, she found only a "mild to moderate" limitation in plaintiff's

ability to "understand, remember, or apply complex directions and instructions" and no

limitation in her ability to "understand, remember, or apply simple directions and instructions;

use reason and judgment to make work-related decisions; maintain personal hygiene and

appropriate attire; and demonstrate awareness of normal hazards and taking appropriate

precautions". Id.

Plaintiff argues that ALJ Chaykin "effectively rejected Dr. Ippolito's opinion"

because he found that "evidence received at the hearing level supports somewhat greater

limitations than Dr. Ippolito found".  Plaintiff's Memorandum of Law [21-1] at 20, citing

Administrative Record [13] at 23.  Plaintiff asserts that ALJ Chaykin assessed "greater

limitations" "without any medical authority".  Id.  However, ALJ Chaykin explained his

rationale:

> "However, the undersigned considered the claimant's complaints
> of anxiety, especially in social situations in crowds in limiting her
> interaction with others, and in limiting her to no more than simple,
> routine tasks in a work setting, and on the whole finds moderate
> limitations in all areas of the B criteria.  In that regard, the
> evidence received at the hearing level supports somewhat greater
> limitations than Dr. Ippolito found."

Administrative Record [13] at 23.  In the section of his opinion analyzing the paragraph B

criteria, and elsewhere in the portion of his opinion discussing evidence of plaintiff's functional

abilities, ALJ Chaykin cited a range of evidence, including the results of the psychiatric

consultative examination (id. at 19, citing Dr. Ippolito's report), mental status examinations

conducted by plaintiff's treating physicians (id. at 19, 22, citing records from Buffalo Spine and

Sports Medicine), her mental health treatment records (id. at 19, 22, citing records from

Horizon), and information plaintiff herself provided about her own ability to function (id. at 19,

citing plaintiff's Function Report).  After assessing this evidence, ALJ Chaykin concluded that

plaintiff had moderate limitations in each of the paragraph B areas of functioning, which is

somewhat more restrictive than the "mild-to-moderate" limitations that Dr. Ippolito opined in

some functional areas. *See* id. at 19, 23.

   Plaintiff argues that ALJ Chaykin's finding that plaintiff can "sustain

concentration and persistence for periods of up to two hours at a time" is without support in the

record.  Plaintiff's Memorandum of Law [21-1] at 21-23.  As plaintiff points out (id. at 21), the

SSA considers the ability to "maintain concentration and attention for extended periods (the

approximately 2-hour segments between arrival and first break, lunch, second break, and

departure)" a part of the "[u]nderstanding, carrying out, and remembering simple instructions"

that is a part of the "[m]ental [a]bilities [n]eeded [f]or [a]ny [j]ob".  Social Security Program

Operations Manual System (POMS) DI 25020.010.B.2.a.  Moreover, the ability to "maintain

attention for extended periods of 2-hour segments (concentration is not critical)" is considered by

the SSA as one of the "[m]ental [a]bilities [c]ritical [f]or [p]erforming [u]nskilled [w]ork".  Id.

25020.010.B.3.d.  "Unskilled occupations are the least complex types of work.  Jobs are

unskilled when persons can usually learn to do them in 30 days or less".  SSR 82-41, Titles II

and XVI: Work Skills and Their Transferability as Intended by the Expanded Vocational Factors

Regulations Effective February 26, 1979, 1982 WL 31389, *2 (1982).

   Plaintiff incorrectly states that there is no support in the record for ALJ Chaykin's

finding.  First, plaintiff points to no evidence in the record that specifically states that she is

unable to sustain concentration and persistence for periods of up to two hours.  *See* Plaintiff's

Memorandum of Law [21-1] at 21-23.  An ALJ "is entitled to rely not only on what the record

says, but also on what it does not say".  Diaz v. Shalala, 59 F.3d 307, 315 (2d Cir. 1995), *citing*

-14-

Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983).  Further, Dr. Ippolito's opinion

supports ALJ Chaykin's finding.  She opined that plaintiff had "moderate limitations" in her

ability to "sustain concentration and perform a task at a consistent pace" and no limitations in her

ability to "understand, remember, or apply simple directions and instructions".  Administrative

Record [13] at 326.  This finding is consistent with ALJ Chaykin's conclusion that plaintiff could

perform unskilled work, which includes the ability to "maintain attention" for "2-hour

segments".

   Further, the ALJ properly accounted for plaintiff's limitations in the RFC.

Moderate limitations in some or all areas of mental functioning may be accounted for in an RFC

by limiting a plaintiff to simple, routine work.  Uplinger v. Berryhill, 2019 WL 4673437, *7

(W.D.N.Y. 2019) ("the ALJ appropriately incorporated marked limitations in dealing with stress

and moderate limitations in maintaining a schedule into plaintiff's RFC by limiting plaintiff to

work in a low stress work environment reflected by simple instructions and tasks, with no

supervisory duties, no independent decision-making, no strict production quotas, and minimal

changes in work routine and processes and limiting her to frequent interaction with supervisors

and occasional interaction with coworkers and the general public"); see also Shannon v.

Berryhill, 2018 WL 6592181, *3 (W.D.N.Y. 2018) ("[t]here is significant case law indicating

that the ALJ's limitation of Plaintiff to 'simple, routine tasks' and 'working primarily alone, with

only occasional supervision' accounts for her [moderate] limitations for performing activities

within a schedule and maintaining regular attendance"); Landers v. Colvin, 2016 WL 1211283,

*4 (W.D.N.Y. 2016) ("[p]laintiff fails to demonstrate that these moderate limitations require the

finding of a more limited RFC.  The determination that Plaintiff is limited to 'simple, repetitive,

and routine tasks' accounts for Plaintiff's limitations as to maintaining attention and concentration, performing activities within a schedule, and maintaining regular attendance").

   Finally, ALJ Chaykin assessed evidence that demonstrated plaintiff's mental health conditions were no worse after the claimed date of disability (January 1, 2017) than before that date, when they did not prevent her from performing the activities of a fireman.  Id. at 246 ("Julie rated her symptoms of depression at level 8 on a scale of 10, all the time . . Julie also reported she has anxiety and reported she has fear of being out and working with the public.  Se reported she can go out shopping and do her firefighter chores but does not like being in really crowded places, i.e. she will go to the mall when it is not crowded").  He analyzed mental health treatment records dated both before and after plaintiff's claimed date of disability.  Id. at 19, 22, *citing* Horizon treatment records from 2013, and 2017-2019.  ALJ Chaykin took this evidence into account throughout his analysis of both the paragraph B areas of functioning and the RFC, and further supports his conclusions.  Id. at 19-23; *see also*, *e.g.* Fiducia v. Commissioner, 2015 WL 4078192, *4 (N.D.N.Y. 2015) ("[a]lthough alleging an onset date of January 16, 2008, plaintiff's impairments date back years, and the record includes mental health treatment records dating back to 2007, a time when plaintiff was employed as a cashier . . . the observations of the mental health providers are similar to those after the alleged onset date").  These conclusions were further supported by plaintiff's testimony that she stopped working "due to back issues", rather than because of her mental health issues.  Administrative Record [13] at 21, citing plaintiff's testimony.

   Accordingly, ALJ Chaykin's RFC limiting plaintiff to "simple, routine tasks", with only "occasional changes in the work setting, and limited to occasional interaction with supervisors, coworkers and the public" is supported by evidence in the record and accounts for

plaintiff's moderate limitations.  Further, his findings that plaintiff can maintain attention for the

2-hour segments required for unskilled work is likewise supported by substantial evidence.

## CONCLUSION

For these reasons, the Commissioner's motion for judgment on the pleadings [25]

is granted, and plaintiff's motion [21] is denied.

 **SO ORDERED**.

Dated: February 21, 2023

/s/   Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge